TIMOTHY JASPER RINARD *v.* STATE OF INDIANA.

[No. 975S237. Filed July 6, 1976.]

Robert S. Bechert, Deputy Public Defender of Allen County, of Fort Wayne, for appellant.

Theodore L. Sendak, Attorney General, Charles M. Russell, Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Timothy Jasper Rinard, was convicted on February 7, 1975, of violating the Indiana Uniform Controlled Substances Act, delivery of cocaine. He was sentenced by the jury to imprisonment for a period of fifteen years. A motion to correct errors, with supporting memorandum, was filed by the Appellant on June 13, 1975. This motion was denied on June 27, 1975. This appeal has been kept viable since that date by appropriate extensions of time requested by the Appellant and granted by this court.

## I.

We will first consider the contention of the Appellant that the evidence at trial was insufficient to support the jury's verdict. That evidence revealed that on April 29, 1974, Robert Jeffries Foster, a police informant, telephoned the Appellant to arrange a purchase of cocaine. He then called Officer Thomas E. Stoots of the Fort Wayne Police to report the arrangement. Stoots picked up Foster and drove to a gas station, where he was met by another police officer, Steven D. Schulien. The two policemen strip-searched their informant

and then proceeded toward the home of the Appellant in separate vehicles.

Foster had served as a police informant for a number of months and had assisted officers Stoots and Schulien in some twenty-five drug purchases. He rode with Officer Stoots, who parked his car approximately six houses, an estimated five hundred feet, from the Appellant's residence. Foster was given $90.00 and proceeded to enter the home. Stoots could not see who opened the door. When Foster exited, Stoots observed the Appellant. Foster returned to the car and handed a "pink paper packet" to Stoots. He indicated it was cocaine.

In the meantime, Officer Schulien had parked his unmarked vehicle so that he could observe the rear entrance of the Appellant's residence. Approximately ten minutes after Foster had left the home, Schulien saw the Appellant walk to a Corvette parked about thirty or thirty-five feet from Schulien's car. While this occurred during the early evening, it was still light and Schulien watched the Appellant for some thirty seconds.

Foster testified that he had purchased the "pink paper package" from the Appellant. A police chemist testified that the substance contained in this package was indeed cocaine. This package and its contents were also admitted into evidence.

In determining whether a verdict is supported by sufficient evidence, this court does not judge the credibility of witnesses or weigh the evidence. We look at the evidence most favorable to the State and the reasonable inferences to be drawn from that evidence. A verdict will not be disturbed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Young* v. *State*, (1975) 264 Ind. 1, 332 N.E.2d 103; *Blackburn* v. *State*, (1973) 260 Ind. 5, 291 N.E.2d 686; *Jackson* v. *State*, (1971) 257 Ind. 477, 275 N.E.2d 538.

The evidence in this case was sufficient to support the jury's verdict. The Appellant presented an alibi defense at trial to

establish that he was not at his home during the alleged illegal transaction. It was within the province of the jury, however, to reject this theory. The Appellant's argument submits that the chief prosecuting witness, police informant Foster, was an unreliable witness and that the corroboration provided by testimony of police officers placing the Appellant at the scene was "minimal." It is added that only one witness called by the Appellant was impeached. These assertions ask us to judge the credibility of witnesses and weigh the evidence. This we cannot do.

## II.

The Appellant also challenges the admission into evidence of the cocaine allegedly purchased from the Appellant. It is asserted that the State failed to conclusively demonstrate that the chain of custody of that evidence was unbroken.

Officer Stoots received the "pink paper package" from Robert Foster at approximately 7:12 p.m., April 29, 1974. The officer put the package in an envelope, on which he wrote the date, time, location, the suspect and the alleged contents. The envelope was signed and sealed by Officer Stoots. When he returned to the police station, Stoots placed this envelope into another plastic envelope, and filled out a police department continuity slip. The evidence was then deposited in a locked security box in the property room of the Fort Wayne Police Department's Bureau of Vice and Narcotics.

Access to this security box, a used postal drop box with a slot opening, could only be had through a back panel which was padlocked at all times. Two police officers had keys. One was the custodian of evidence in the property room, George Lazoff. He removed the package deposited by Stoots on April 30, 1974, at 7:30 a.m. The other possessor of a key, a superior of Lazoff, had not, to the best of Lazoff's knowledge, opened the box on the evening of April 29 or earlier in the morning of April 30. Lazoff took the evidence to Barker Davie, a police chemist. Davie tested the substance and returned it to Lazoff

on May 1, 1974, at 11:00 a.m. The continuity slip was signed by the officers at each transfer.

When the exhibit was returned, Lazoff placed the plastic envelope and its contents in still another envelope. The envelope was written on for filing purposes and sealed. It was then placed in a locked security box, where it remained until the day of trial. Lazoff then removed the exhibit, took it to the court room, and handed it to the prosecutor.

The Appellant focuses on a part of Lazoff's testimony in which the witness states that he removed the evidence from "our locked safe" on the morning of the trial. The Appellant contends that it is not explained how the contraband got from the "locked security box" to the "locked safe", and that this gap is fatal. We do not agree.

An exhibit is admissible if the evidence regarding its chain of custody strongly suggests the exact whereabouts of the evidence at all times. The State need not exclude all possibilities of tampering, but need only provide "reasonable assurance" that the exhibit has passed through the various hands in an undisturbed condition. *Kolb* v. *State,* (1972) 258 Ind. 469, 282 N.E.2d 541; *Guthrie* v. *State,* (1970) 254 Ind. 356, 260 N.E.2d 579.

Accordingly, the State did not need to call as a witness the superior who also had a key to the drop box. *Carlisle* v. *State,* (1974) Ind. App., 319 N.E.2d 651. Nor did the ambiguity arising out of mention of the "locked security box" and the "locked safe" prevent admission of the exhibit into evidence. Officer Lazoff testified that the exhibit was in a locked security box from the time of its return by the chemist until the time of trial. He testified that the box was under his control and custody. Testimony that the evidence was "in our locked safe" on the morning of the trial raised at most a *possibility* of tampering which could not render its admission into evidence improper.

We also note that trial counsel for the Appellant did not, when he objected to the admission of this evidence, maintain

that testimony regarding the "locked safe" created a gap in the chain of custody. Rather, the attention of the trial court was drawn to the fact that Officer Lazoff's superior also had a key to the locked drop box. The failure to object on a specific ground is generally considered a waiver of the right to rely on such ground on appeal from the trial court's ruling on the objection, unless it is clear under the circumstances that the trial judge considered the unspecified ground. *Jethroe* v. *State,* (1974) 262 Ind. 505, 319 N.E.2d 133. Such circumstances are not present here. A defendant cannot give one reason for objection at trial and another on appeal. The latter is waived when not made before the trial court. *Tewell* v. *State,* (1976) 264 Ind. 88, 339 N.E.2d 792.

## III.

The issue of Officer Stoots' familiarity with the residence of the Appellant was raised during the officer's direct examination:

"Q. I want to call your attention to the particular defendant involved here. Have you even been to 1304 Stophlet Street before?
A. Yes, I have.
Q. On what date or dates?
A. I was at that address on April 25th, 1974.
Q. And for what purpose was that?
A. That was a controlled buy taking place at that time."

Counsel for the Appellant objected to this line of questioning on the ground that it was irrelevant and prejudicial. This objection was sustained. Defense counsel then requested that the jury be instructed to disregard the testimony. The trial court responded that it did not think that such admonishment was necessary, but that an instruction could be submitted which would cover the matter. The Appellant contends that this refusal to admonish the jury was reversible error.

This situation closely parallels cases in which the admission of such testimony has been found to be reversible error, with and without attempts to cure through admonishment of the

jury to disregard the evidence. *Aubrey* v. *State*, (1974) 261 Ind. 692, 310 N.E.2d 556; *White* v. *State*, (1971) 257 Ind. 64, 272 N.E.2d 312. Under the circumstances of this case, however, any error here must be regarded as harmless.

Trial counsel for the Appellant elicited this same information about a "controlled buy" during cross-examination of this witness. Defense counsel voiced no objection and made no effort to move that the answer be stricken as unresponsive. Reversal may not be predicated upon the erroneous admission of evidence when evidence having the same probative effect is admitted without objection or without contradiction. *Boles* v. *State*, (1973) 259 Ind. 661, 291 N.E.2d 357. We also note that other evidence from which the jury could infer prior criminal conduct on the part of the Appellant was also admitted without objection. Further cross-examination of Stoots revealed that he had had the Appellant's residence under investigation for more than nine months. Informant Foster testified that he had made drug purchases from the Appellant prior to the transaction in question. In this context, we do not think that the failure of the trial court to admonish the jury can be said to be error so prejudicial that reversal is required.

## IV.

Finally, it is argued that the trial court erred in refusing to permit a witness to take the stand in surrebuttal. This witness, Elizabeth Holt, had been called by the defense during its presentation of evidence to testify on Robert Foster's reputation in the community for truthfulness. On cross-examination the witness denied ever speaking to Officer Stoots about becoming a police informant and stated that she had spoken to an Officer Burkhart. Officer Stoots was later called as a rebuttal witness. He testified that the witness had indeed spoken to him on at least two occasions and that she had, to the best of his knowledge, never spoken to Officer Burkhart.

When defense counsel attempted to recall Elizabeth Holt for the purpose of surrebuttal, the State objected on the

grounds that she had remained in the courtroom following her prior testimony and could not testify further without violating the trial court's separation of witnesses order. This objection was sustained.

The permitting of surrebuttal testimony is a matter of trial court discretion. 28 I.L.E. *Trial* § 54 (1960) and cases cited therein. The separation of witnesses and the course to be followed when a separation order is violated are also matters within the discretion of the trial court. Such rulings will not be disturbed unless there is a manifest abuse of that discretion. *Dudley* v. *State*, (1970) 255 Ind. 176, 263 N.E.2d 161; *Romary* v. *State*, (1945) 223 Ind. 667, 64 N.E.2d 22. We can find no such abuse here. No offer to prove was made at trial and the argument of the Appellant merely speculates as to what *might* have been said on surrebuttal. We are presented with no facts which indicate that the testimony would have been anything other than cumulative and repetitious. Moreover, the rebuttal evidence presented by the State merely impeached testimony of a witness whose sole purpose was to impeach still another witness. It was not reversible error to refuse to allow surrebuttal under such circumstances.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 351 N.E.2d 20.