Robert FLYNN, a/k/a Keith Brizzie,
Appellant (Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–885A248.

Court of Appeals of Indiana,
Fourth District.

Feb. 11, 1986.

Kenneth T. Roberts, Kenneth T. Roberts
& Associates, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D.
Shuman, Deputy Atty. Gen., Indianapolis,
for appellee.

MILLER, Judge.

The defendant-appellant, Robert Flynn,
also known as Keith Brizzie (Flynn herein),
was convicted of robbery while armed with
a deadly weapon and was sentenced to
serve six years in prison. On appeal, Flynn
raises a number of errors; however, we
address but one: whether the trial court
abused its discretion in denying Flynn's
motion to reopen his defense. Late in the
afternoon of the first day of this jury trial,
Thursday, February 28, 1985, the state
rested its case. After a brief recess, dur-
ing which Flynn consulted with his attor-
ney, the defense also rested, without
presenting any evidence. The trial court
thereupon adjourned for the day. The next
morning, before the jury reconvened, Flynn
moved *pro se* to reopen his defense, and
the trial court denied his motion. We be-
lieve the trial court abused its discretion in
doing so, because the state failed to estab-
lish it would have been unduly prejudiced
by the reopening of Flynn's defense. The
procedure would not have seriously dis-
rupted the trial or placed undue emphasis
on Flynn's testimony. In addition, Article
I, Section 13 of the Indiana Constitution
mandates our courts to afford a criminal
defendant the opportunity to testify in his
own behalf. Therefore, we reverse the
judgment of the trial court.

The record shows that Flynn's jury trial
for the armed robbery of a gasoline station

began on Thursday, February 28, 1985. The state presented testimony from five witnesses as follows: 1) Steven Andrews, resident of Greenfield, Indiana, one of Flynn's alleged armed robbery victims, who gave eyewitness and identification testimony; 2) Keith Kafoure, resident of Indianapolis, the other robbery victim, who also gave eyewitness and identification testimony; 3) Tammy Russell, resident of Indianapolis, Flynn's sister, who testified that Flynn had stitches on his nose on the date of the robbery (Andrews and Kefoure testified that the robber had stitches on his nose); 4) Robert Carney, resident of Indianapolis, who testified that Flynn received stitches on his nose about the date of the robbery, that Flynn told him he (Flynn) had robbed a gas station, and that Flynn asked him not to testify; and 5) Detective Gerald Schemenaur of the Marion County Sheriff's Department, who testified to his investigation of the robbery and to Andrew's and Kefoure's attempts to identify the robber from three different photographic arrays. All five witnesses were thoroughly cross-examined by defense counsel.

The state rested its case late on the afternoon of Thursday, February 28, at which time defense counsel requested a recess to consult with his client, Flynn. According to defense counsel, he and Flynn discussed whether Flynn should testify on his own behalf and whether to call another man (a federal prisoner available as a witness pursuant to the trial court's order of habeas corpus issued at Flynn's request) as a witness. After the recess, in the presence of the jury, defense counsel announced that the defense also rested. Court was immediately adjourned for the day, at around 5:15 p.m.

The following morning, before the jury reconvened and after brief arguments on Flynn's two motions for mistrial, Flynn moved *pro se* to reopen his defense because he wanted to testify and to call the federal prisoner as a witness. Flynn claimed defense counsel had told him during the previous afternoon's recess he would have all night to decide whether to testify, but defense counsel denied this.

The prosecutor objected to the reopening of the defense on the grounds that Flynn already had been the cause of much delay in the trial, that Flynn had had more than adequate time to decide if he wanted to testify, and that all of the prosecution witnesses, as well as the federal prisoner—defense witness, had been released the previous afternoon when the defense rested. The prosecutor stated:

"Well, I'd point out to the Court and ask the Court to take notice of yesterday's proceedings. One of these witnesses we had to go get three times yesterday and bring back just to be able to be available to testify. Yeah, I know where the other witnesses are, Judge, but they're working and they've been inconvenienced an awful lot of times in this case, many of them by the Defendant here. He's had them come down for lineups that he refused to stand in and everything else. Now, I can't get them here in the next half an hour and I assume that we're going to have to go get them and it would be—I can't even guarantee you I can get them this day. I mean the people are here and they're in town and I could probably produce them by the first of next week. But I think that's an unreasonable delay to the State and to this Jury."

(R. 298–99) The trial court denied Flynn's motion to reopen his defense, finding that the state would be prejudiced because its witnesses had been released and would be unavailable for rebuttal.

The decision to allow a party to reopen its case after the parties have rested is committed to the discretion of the trial court, reviewable only to determine whether that discretion has been abused. *E.g., Gorman v. State* (1984), Ind., 463 N.E.2d 254; *Owen v. State* (1978), 269 Ind. 513, 381 N.E.2d 1235. A primary consideration—but not the only consideration—is whether the opposing party has an adequate opportunity to prepare a rebuttal to the evidence offered. *See Lee v. State* (1982), Ind., 439 N.E.2d 603, 604. Other considerations include the nature of the

testimony sought to be introduced upon reopening the case, *Gorman v. State, supra; Owen v. State, supra; Rinard v. State* (1976), 265 Ind. 56, 351 N.E.2d 20 (on issue of whether to permit surrebuttal testimony) (cited in *Lee v. State, supra*); and whether the stage of the trial at which the motion to reopen was made would have placed undue emphasis on the testimony sought to be presented, *Jones v. State* (1978), 269 Ind. 543, 548, 381 N.E.2d 1064, 1067 (no abuse of discretion to allow state to reopen case to present evidence of defendant's age where state both rested and moved to reopen case out of presence of jury, because "no real confusion or inconvenience [was] occasioned by the reopening of the state's case"); *Lewis v. State* (1980), Ind.App., 406 N.E.2d 1226 (no abuse of discretion in allowing state to reopen case to present identification testimony where state sought to reopen immediately subsequent to the close of its case-in-chief and where the witness to be presented in reopening was the last witness in case-in-chief; thus, no undue emphasis on witness's reopening testimony).

The trial court denied Flynn's motion to reopen his defense based on prejudice to the state because 1) Flynn's witness had been returned to federal prison and could not be returned to court except upon motion for a writ of habeas corpus; 2) the state's witnesses had been dismissed and were not readily available for rebuttal; and 3) Flynn had adequate opportunity to consult with counsel and had chosen not to testify prior to resting.

First, although we base our reversal of the trial court on the denial of the defendant's right to testify on his own behalf—and therefore do not address whether it would have been error to deny Flynn the opportunity to present another witness—it is clear that *the state* could not have been prejudiced by the unavailability of Flynn's federal prisoner-witness.

■ Second, all of the state's witnesses resided locally, and the prosecutor did not establish unequivocally that any one of the local witnesses could not have been con-

tacted and put on alert to return to court on the day of Flynn's motion. The prosecutor admitted he could have had his witnesses back in court on the Monday following the Friday on which Flynn moved to reopen his case. The retrieval of such witnesses for rebuttal purposes thus seems more of an inconvenience to the state than a matter of prejudice justifying the denial of Flynn's motion to reopen. Moreover, it is not clear that any rebuttal testimony would have been necessary. Although Flynn made no offer of proof upon denial of his motion to reopen, he did state that he wanted the jury to hear his side of the story. It may be presumed he would have denied participation in the crime and perhaps offered an alibi. (Flynn filed a notice of alibi defense that was insufficient for lack of detail, but it does not appear the state ever moved in limine to exclude alibi testimony on this basis.) It is not clear that the state's witnesses, who gave eye-witness and/or identification testimony in the state's case-in-chief, could have done anything more than repeat their testimony-in-chief in rebuttal to Flynn's testimony. Such is not the proper function of rebuttal testimony.

Third, while it is true that Flynn had ample opportunity to consult with counsel and decide whether to present a defense before resting, the circumstances here do not convince us that the state would have been prejudiced by allowing Flynn to change his mind and reopen his defense. Flynn's counsel rested at the very end of the proceedings on Thursday, February 28, 1985, whereupon the trial court immediately recessed the trial until the following day. Flynn moved to reopen his case on Friday morning before the jury reconvened. All of the state's witnesses resided locally, and if needed for rebuttal at all, could have been gathered not later than the following Monday. Thus, "no real confusion or inconvenience" would have been occasioned by reopening Flynn's defense. *See Jones v. State, supra.*

■ Perhaps more importantly, our constitution states: "In all criminal prose-

cutions, the accused shall have the right ... to be heard by himself and counsel...." IND. CONST. Art. 1 Sec. 13. This provision has been said to secure the right of a criminal defendant to testify in his own behalf. *See Curl v. State* (1980), 272 Ind. 605, 400 N.E.2d 775. Thus, the trial court's denial of Flynn's motion to reopen his defense, in which the defendant himself would have testified in his own behalf, amounted to a holding that Flynn had waived his constitutional right to be heard. While this right, no doubt, can be waived, in the present circumstances, a trial judge should exercise his discretion to permit or deny a defendant to reopen his case very cautiously and should require a stronger showing of prejudice to the state than in a case where the defendant already has presented some evidence in his defense. In analogous situations, where the state has sought to reopen its case-in-chief, our supreme court has expressed a liberal attitude toward allowing the prosecution to do so to cure a claimed insufficiency of evidence, "since a trial is not a game of technicalities, but one in which the facts and truth are sought." *Eskridge v. State* (1972), 258 Ind. 363, 369, 281 N.E.2d 490, 493, *quoted in Lewis v. State*, 406 N.E.2d at 1231; *see Anthony v. State* (1980), 274 Ind. 206, 409 N.E.2d 632; *Maxey v. State* (1969), 251 Ind. 645, 244 N.E.2d 650, *cert. denied* 397 U.S. 949, 90 S.Ct. 969, 25 L.Ed.2d 130.

In light of all the foregoing, it is apparent the state showed insufficient prejudice to block Flynn's motion to reopen his defense. The trial court abused its discretion under the circumstances in denying the motion. Therefore, we reverse the judgment of the trial court.

YOUNG, P.J., concurs.

CONOVER, J. dissents with opinion.

CONOVER, Judge, dissenting.

I respectfully dissent. In my opinion the majority improperly puts the burden on the State to prove it would have been prejudiced had Flynn been allowed to reopen his

case. Control of the proceedings is within the trial court's sound discretion. A reversal is in order only when a manifest abuse of discretion and the denial of a fair trial to the complaining party is shown. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102, 1108. That we might have decided differently were we on the trial bench is unimportant, it matters only whether the trial court manifestly abused its discretion.

The majority here bases its reversal on the denial of Flynn's right to testify in his own behalf. Were this the case I would agree, but Flynn was not denied this right under the facts before us.

As the majority notes, the right to testify in his own behalf can be waived by a defendant. I can envision no clearer case of an express, informed waiver than this case presents. After the State rested, defendant Flynn requested and was granted a brief recess. During this recess, Flynn consulted with and was advised by counsel. Following the recess, Flynn rested his case. Thus, he waived his right to testify in his own behalf.

The trial court gave Flynn ample opportunity to testify and present witnesses. It was Flynn's decision not to testify or present witnesses, he was not prevented from doing so as the majority states.

When Flynn moved to reopen his case the next day, having already waived his right to testify in his own behalf and present witnesses, it was solely within the trial court's discretion whether or not to grant the motion. There was no manifest abuse of the trial court's discretion when it denied Flynn's motion under these circumstances.

I would affirm the trial court.