Michael SMILEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 41A01–9402–CR–46.

Court of Appeals of Indiana,
First District.

April 28, 1995.

Transfer Denied July 5, 1995.

Jeffrey J. Jinks, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

BAKER, Judge.

In this appeal we clarify when a judge may preclude a witness from testifying because that witness violated the court's separation of witnesses order. Appellant-defendant Michael Smiley contests his two convictions for Conspiracy to Commit Robbery while armed with a deadly weapon,[1] both Class B felonies, and his two convictions for Conspiracy to Commit Burglary,[2] both Class B felonies. Specifically, he claims that the trial court erred in not allowing a defense witness to testify because she had violated the court's separation of witnesses order.

## FACTS

The State charged Smiley with one count of conspiracy to commit robbery and one count of conspiracy to commit burglary for a break-in at the home of Ronnie Toler on January 10, 1992. Smiley was also charged with the same two crimes for an incident at the home of Mike and Brenda Ford on January 28, 1992.[3] Smiley committed both incidents with co-defendant Casey Wooldridge.

During a pretrial proceeding, Smiley filed notice that he would present an alibi defense. In that same proceeding, the court imposed a separation of witnesses order instructing the witnesses that they could not be present in the courtroom when another witness was testifying. Further, the court notified everyone in the courtroom that they could not discuss any witness' testimony with other witnesses until the jury rendered a verdict. Record at 179. The judge also warned that there would be repercussions if the order was violated. R. at 180.

On November 1, 1993, Smiley's trial commenced. Wooldridge testified and implicated Smiley in both break-ins. Wooldridge also admitted that he had received a beneficial

plea agreement from the State in exchange for his testimony against Smiley. Following the State's case-in-chief, Smiley presented several witnesses who testified regarding his alibi defense. After each witness' testimony, the judge reminded the witness and those in the courtroom that no one was to discuss the witness' testimony. However, despite the court's continual reiteration of its witness separation order, the judge was notified several times throughout the trial that his order had been disobeyed.

Two of the witnesses testifying on behalf of Smiley were his aunt, Janet Huff, and his sister, Della McCall. After Huff testified, another alibi witness' testimony was heard and then McCall was called to the stand. After McCall was sworn in, but before she began testifying, the State objected and informed the court that a deputy prosecutor had seen Huff, who had just finished testifying, run into the ladies restroom with McCall. The State indicated that the two women were in the restroom together for several minutes. The State requested that the court not allow McCall to testify because she had disobeyed the court's separation of witnesses order.[4] The court, outside the presence of the jury, reminded Huff that she was still under oath and questioned her about whether she entered the restroom with McCall, immediately after testifying, and whether they discussed Huff's testimony. The court asked, "What did you say to [McCall] in the restroom?" R. at 1206. Huff responded, "Nothing really," and then added "If you think I discussed the case, no, I did not." R. at 1206. The court then ordered both women to leave the courthouse and not to return. Since the court refused to allow McCall to testify, Smiley objected and requested that he be permitted to ask McCall some questions so that her testimony would be preserved on the record. The court noted that Smiley's objection was

1. IND. CODE §§ 35–41–5–1 and 35–42–5–1.

2. IND. CODE §§ 35–41–5–2 and 35–43–2–1.

3. We note that the issue in this appeal deals with the court's refusal to allow an alibi witness to testify. This witness' testimony, however, would only have bolstered Smiley's alibi defense as to the January 28, 1992, incident. Thus, we do not

review Smiley's convictions for the January 10, 1992, break-in.

4. Although there had been several violations of the separation order brought to the court's attention, this was the first instance where a party requested that a witness be disqualified for violating the separation order.

on the record, denied Smiley's request, and called the next witness.

Later in the proceedings that day, the court permitted Smiley to make an offer of proof regarding what McCall's testimony would have been had she been allowed to testify. Smiley's counsel read a statement that he had prepared which stated that McCall would have testified that she and Smiley both spent the night of January 28, 1992, at their mother's house and they talked all evening until Smiley went to bed around 2:30 a.m. R. at 1240-48. In addition, McCall would have testified that in July 1992 she had a conversation with Wooldridge while they were both incarcerated in the Johnson County Jail. During that conversation, Wooldridge indicated to McCall that he would implicate Smiley in the January 28 break-in in order to receive a beneficial plea agreement from the State. McCall believed that Wooldridge was lying about Smiley's involvement in that crime. This evidence, Smiley claims, would have impeached Wooldridge's credibility as a witness.

On November 3, 1993, the jury convicted Smiley on the two counts of conspiracy to commit robbery while armed with a deadly weapon and on the two counts for conspiracy to commit burglary. The court sentenced Smiley to a total of thirty years imprisonment. Smiley contests his convictions claiming that the trial court abused its discretion in excluding McCall's testimony which resulted in a violation of his right to call witnesses on his behalf.

### DISCUSSION AND DECISION

█ The purpose of a separation of witnesses order is to prevent the testimony of one witness from influencing that of another. *Alexander v. State* (1992), Ind.App., 600 N.E.2d 549, 553. Once a separation of witnesses order is granted, the remedy for a violation of the order is a question left to the sound discretion of the trial court. *Clark v. State* (1985), Ind., 480 N.E.2d 555, 558. We will not disturb the trial court's exercise of discretion unless there is a showing of prejudice tantamount to an abuse of discretion.

*Wardlaw v. State* (1985), Ind., 483 N.E.2d 454, 456.

█ A trial court has the power to exclude the testimony of a witness who has violated the court's separation order. *Murphy v. State* (1985), Ind.App., 475 N.E.2d 42, 50-51, *trans. denied.* However, disqualification of a witness is a drastic sanction due to the severe impact it has on the defendant's constitutional rights. The Sixth Amendment to the United States Constitution guarantees a defendant the right to present witnesses on his behalf. *Borst v. State* (1984), Ind.App., 459 N.E.2d 751, 753. This right is embodied in the due process requirement of the Fourteenth Amendment and applies to proceedings in state courts. *Id.* Therefore, because a defendant has a constitutionally protected right to present evidence in his favor, exclusion of a defense witness due to a violation of a witness separation order is not always appropriate.

█ For example, our supreme court has held that it is prejudicial error to refuse to permit an errant witness to testify where the party calling the witness is not at fault for the violation. *Brannum v. State* (1977), 267 Ind. 51, 366 N.E.2d 1180, 1184. In *Taylor v. State* (1891), 130 Ind. 66, 70, 29 N.E. 415, 417, our supreme court stated:

> The rule ... is that, where a party is without fault and a witness disobeys an order directing a separation of the witnesses, the party shall not be denied the right of having the witness testify, but the conduct of the witness may go to the jury upon the question of his credibility....

Therefore, since the jury is entrusted with the job of determining witness credibility, where the violation resulted from no wrongdoing on the part of the party calling the witness, judges should allow an offending witness to testify and then permit the other party to inform the jury about the witness' misconduct. However, if the party objecting to the witness' testimony can show that the party calling the witness somehow connived or caused the witness to violate the court's order then disqualification of the witness is appropriate.[5]

5. We observe that at the time of Smiley's trial,    when the court disqualified McCall as a witness,

In addition to the defendant's cooperation in the violation of the order as a justification for the exclusion of a witness, Indiana courts have also upheld disqualifications where the witness' testimony would have been cumulative or inadmissible. *Rinard v. State* (1976), 265 Ind. 56, 351 N.E.2d 20, 25 (no error in trial court's exclusion of witness where testimony would have been cumulative and repetitious). In these instances, the rationale for excluding the witness is that the defendant suffered no prejudice because the witness' testimony was not crucial. However, where the excluded witness is the sole witness to corroborate the defendant's defense, the witness' testimony is crucial and courts have generally concluded that disqualification is an abuse of discretion. *See Toth v. State* (1978), 176 Ind.App. 283, 375 N.E.2d 256, 258 (reversible error in preventing testimony of sole defense witness because of critical nature of witness' testimony and absence of fault of defendant).

With these standards in mind, we now turn to the resolution of the present issue. In this case, the court precluded McCall from testifying because she had violated its separation of witnesses order. We acknowledge and understand that the judge was extremely frustrated by the repeated violations of his order. However, this alone was not enough to preclude McCall from testifying. There was no evidence in the record that Smiley connived to have McCall and Huff violate the separation order. Further, no evidence was presented that McCall and Huff actually discussed Huff's testimony in the restroom. In fact, Huff, who was still under oath, emphatically told the judge that she did not discuss her testimony with McCall. Thus, the court's disqualification of McCall violated Smiley's right to call witnesses on his behalf and constituted an abuse of discretion.

Notwithstanding the trial court's error, we need not reverse because the disqualification of McCall did not result in prejudice to Smiley. *Wardlaw*, 483 N.E.2d at 456. McCall would have testified that: 1) she was with Smiley on the evening of January 28, 1992, 2) Wooldridge was testifying against Smiley in exchange for a beneficial plea agreement from the State, and 3) she thought that Wooldridge was lying in implicating Smiley in the January 28 offense. As to McCall's testimony supporting Smiley's alibi defense for the January 28 incident and her testimony that Wooldridge had a deal with the State, this evidence would have been nothing more than cumulative. The record reveals that three witnesses testified that they were also at Smiley's mother's house with Smiley on the evening of January 28. Further, the record shows that Wooldridge testified at Smiley's trial and admitted that he received a plea agreement in exchange for his testimony against Smiley. R. at 996. Thus, because other witnesses testified in support of Smiley's alibi defense and Wooldridge testified about his deal with the State, this evidence was before the jury and McCall's testimony was not crucial to Smiley's defense. As a result, Smiley suffered no prejudice by the court's exclusion of McCall's testimony.

there was no statutory or common law rule regarding witness separation orders. However, on January 1, 1994, Ind. Evidence Rule 615 became effective. That rule provides:

At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of or discuss testimony with other witnesses, and it may make the order on its own motion. This rule does not authorize the exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

The adoption of Evid.R. 615 significantly changed the rule espoused in prior caselaw

which held that the decision to grant a separation of witnesses order is wholly within the discretion of the trial court. *Garland v. State* (1982), Ind., 439 N.E.2d 606, 608. Now, under Evid.R. 615, a trial court is required to grant a party's request for a witness separation order except as to certain necessary witnesses that are expressly identified in the rule.

Although Evid.R. 615 removed the trial court's discretion in granting a motion for witness separation, the new rule does not address the remedy to be employed if a witness violates the order. Thus, we recognize that Evid.R. 615 has not altered prior caselaw which holds that a court may disqualify a witness for violating a separation order if the violation was caused by the connivance or fault of the party calling the witness.

Finally, we address McCall's proposed testimony regarding Wooldridge's veracity. This testimony would have been inadmissible because neither lay nor expert witnesses are competent to testify that another witness is or is not telling the truth. *Nordstrom v. State* (1994), Ind.App., 627 N.E.2d 1380, 1384, *trans. denied.* Such testimony is highly improper and invades the province of the jury in determining what weight to place on a witness' testimony. *Id.* Thus, McCall's testimony that she thought Wooldridge was lying about Smiley's involvement in the January 28 break-in would have been inadmissible and Smiley cannot show prejudice resulted from the court's exclusion thereof.

In conclusion, the trial court erred in disqualifying McCall; however, because Smiley suffered no prejudice from the error his conviction stands.

Judgment affirmed.

ROBERTSON and SULLIVAN, JJ., concur.