## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 23 2018, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Lawrence Nunley
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lawrence Nunley,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | May 23, 2018<br>Court of Appeals Case No.<br>31A01-1703-PC-547<br><br>Appeal from the Harrison Superior Court<br><br>The Honorable Joseph L. Claypool, Judge<br><br>Trial Court Cause No.<br>31D01-1009-PC-011 |

**Mathias, Judge.**

[1]     Lawrence Nunley ("Nunley") appeals pro se the Harrison Superior Court's denial of his petition for post-conviction relief. Nunley claims that post-

conviction relief is warranted because both his trial and appellate counsel were ineffective.

[2] We affirm.

## Facts and Procedural History

[3] The facts surrounding Nunley's convictions were described in *Nunley v. State*, 916 N.E.2d 712 (Ind. Ct. App. 2009), *trans. denied*, and are reproduced here:

> Nunley lived with his teenage son and his son's girlfriend, K.S. K.S. sometimes babysat six-year-old A.Y. A.Y.'s mother, T.C., testified A.Y. "loved [K.S.] to death." On April 13, 2007, A.Y. asked to spend the night at Nunley's residence. When T.C. dropped off A.Y., Nunley told her K.S. was on the way there. T.C. was under the impression that K.S. would be watching A.Y. According to A.Y., K.S. and her boyfriend were there for only a brief time that night.
>
> Sometime during the evening, Nunley called A.Y. back to his bedroom and showed her a pornographic video. A.Y. was wearing a tee shirt and panties. He took off her panties and licked her vagina. He also made her suck on his penis.
>
> The next day, T.C. and R.C. picked up A.Y. After they had been in the car for a few minutes, A.Y. told them she and Nunley had a secret. A.Y. would not say what it was, so T.C. tried to trick her into telling by saying, "That's okay. I know what the secret is." Then A.Y. wanted to tell them, but she did not want to say it out loud, so her parents gave her a pencil and an envelope to write on. Her note indicated she "was sucking his weenie-bob and he was licking my pee-pee."
>
> After reading the note, T.C. turned the vehicle around and went back to Nunley's residence. She took a bat and started hitting Nunley's motorcycle and truck so he would come outside.

Nunley came to the door. T.C. yelled at him and accused him of molesting A.Y. Nunley denied her accusations.

T.C., R.C., and A.Y. then went to the Washington County Police Department to make a report. They spoke to State Trooper Kevin Bowling. Trooper Bowling first attempted to interview A.Y. alone, but that did not work well, so T.C. stayed in the room with her while A.Y. answered questions. A.Y. said Nunley made her watch a "bad movie." Trooper Bowling asked her what she meant by that, and she said, a "naked movie." T.C. showed him the note A.Y. had written. T.C. believed she left the note with Trooper Bowling, but Trooper Bowling had no record or recollection of what happened with the note. Trooper Bowling referred the case to the Department of Child Services.

Authorities tried to arrange a forensic interview of A.Y., but T.C. did not immediately follow through. The interview was finally conducted on April 18, 2008, a little over a year after A.Y. was molested.

Donna Lloyd Black conducted the forensic interview of A.Y. at Comfort House. A.Y.'s interview was videotaped. Comfort House has an observation room for representatives from the prosecutor's office, law enforcement, and the Department of Child Services. Black can communicate with them by two-way radio, but a child being interviewed cannot see or hear the people in the observation room. Detective William Wibbels was in the observation room during A.Y.'s interview.

Nunley was charged with four counts of Class A felony child molesting: Count 1 alleged he touched A.Y.'s vagina with his mouth, Count 2 alleged he made A.Y. put her mouth on his penis, Count 3 alleged he put his hand in A.Y.'s vagina, and Count 4 alleged he touched A.Y.'s vagina with his penis. He was also charged with one count of Class D felony dissemination of matter harmful to minors, which alleged he showed A.Y. a pornographic movie.

At the time of trial, A.Y. was eight years old. A.Y. started crying at several points during her testimony and needed multiple breaks. A.Y. stated it was hard to say what had happened and that she could only write it. The prosecutor then had her write down what happened and read it to the jury. She testified she saw Nunley's penis when he made her suck on it and he licked her "pee pee." A.Y. testified he forced her to do these things by threatening to hurt her parents or call the police.

T.C. testified as to why she did not immediately bring A.Y. for a forensic interview: "I had second thoughts ... just because of the fact of putting my daughter through this. And not only that ... there's a side of you that thinks maybe if you just don't acknowledge it, that it'll go away." A juror asked, "[W]hat made you continue to think about it? What, was it brought up by [A.Y.]?" T.C. responded, "No, it wasn't brought up by [A.Y.]. It was brought up by other people. Uhm, there were other allegations that I had heard about." Nunley objected and moved for a mistrial, because T.C. had been instructed not to refer to any other allegations against him. The trial court denied the motion for mistrial because T.C. did not specify the nature of the allegations, and it instructed the jury to disregard T.C.'s answer.

The videotape was played for the jury. The video was difficult to understand in some places, but Black testified she was able to understand what A.Y. was saying to her during the interview. The prosecutor therefore asked Black to recount how A.Y. had said Nunley had touched her. Black testified A.Y. said Nunley "touched her on her pee-pee with his weenie-bob, his hand and his tongue," that he "made her put his weenie-bob in her mouth and suck it," and that he made her watch a video with naked people in it. Detective Wibbels also testified concerning A.Y.'s allegations made during the interview.

Nunley testified in his own behalf. He claimed T.C. called and asked if he could watch A.Y. while she went to Corydon. He asserted T.C. did not bring any extra clothes for A.Y., and he did not think A.Y. would be spending the night. He claimed A.Y. fell

asleep on the couch soon after arriving, and then his friend, Michelle Cayton, came over to Nunley's residence to spend the night, leaving shortly before T.C. picked up A.Y. Nunley claimed he was in a relationship with T.C., and when T.C. came to pick up A.Y., she asked to move in with him. He would not let her, and she was angry when she left. Although Nunley voluntarily spoke with the police, he never told them Cayton had been at his residence on the night in question.

The jury found Nunley guilty as charged.

*Id*. at 714–16 (record citations omitted). Nunley was ordered to serve an aggregate sentence of seventy-six years and four months.

[4] On appeal, our court held that the trial court committed reversible error by admitting A.Y.'s hearsay statements made during her interview at the Comfort House approximately one year after the molestation occurred. Because the unreliable hearsay statements were the only evidence supporting Counts 3 and 4, our court reversed Nunley's convictions on those counts. As a result, Nunley's aggregate sentence was reduced by four years and eight months. We affirmed the trial court in all other respects.

[5] On September 24, 2010, Nunley filed a pro se petition for post-conviction relief, and he amended his petition on January 14, 2016. The post-conviction court held an evidentiary hearing on January 12, 2017. The court denied Nunley's petition after concluding that his trial counsel's and appellate counsel's performance was not deficient.

[6] Nunley now appeals. Additional facts will be provided as necessary.

# Standard of Review

Nunley appeals the post-conviction court's denial of his petition for post-conviction relief.[1]

> The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, [a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error— that which leaves us with a definite and firm conviction that a mistake has been made.

*Campbell v. State*, 19 N.E.3d 271, 273–74 (Ind. 2014) (citations and quotations omitted).

Moreover, post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). Post-conviction proceedings

---

[1] Nunley's claim that the State abandoned its right to defend against Nunley's arguments raised in his petition for post-conviction relief because the State failed to present evidence or argument at the hearing on his post-conviction relief lacks merit. The State filed an answer to Nunley's petition, asserted denials of his claims, and actively participated at the hearing.

instead afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002).

## Ineffective Assistance of Trial Counsel

[9] First, we address Nunley's claim that his trial counsel was ineffective. A claim of ineffective assistance of trial counsel requires a showing that: (1) Nunley's trial counsel's performance was deficient by falling below an objective standard of reasonableness; and (2) that the deficient performance prejudiced Nunley such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 669 (1984). Failure to satisfy either of the two elements will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). And "[i]solated mistakes, poor strategy, or bad tactics do not necessarily amount to ineffective assistance of counsel." *Herrera v. State*, 679 N.E.2d 1322, 1326 (Ind. 1997) (citations omitted).

[10] If it is easier to dispose of an ineffectiveness claim on the lack of prejudice, then this is the course we should follow. *Trujillo v. State*, 962 N.E.2d 110, 114 (Ind. Ct. App. 2011). Prejudice occurs when a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013).

[11] Nunley claims that his trial counsel was ineffective for: (1) failing to use A.Y.'s deposition testimony to impeach her at trial; (2) failing to object when the trial

court allowed A.Y. to write down her trial testimony and failing to object when the trial court admitted the written testimony into evidence; (3) failing to object to the admission of the State's Exhibit 2, a DVD entitled "Sex Ed Tutor"; (4) failing to object when the trial court allowed A.Y. to have lunch with her parents, who had not yet testified, in violation of the separation of witnesses order; and (5) failing to object to testimony vouching for A.Y.'s credibility.

[12] As we address Nunley's claims, we do so under the principle that "[r]epresentation is constitutionally ineffective only if the proper functioning of the adversarial process was so undermined that the defendant was denied a fair trial." *Woodson v. State*, 961 N.E.2d 1035, 1042 (Ind. Ct. App. 2012), *trans. denied*. And we do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not best serve the defendant's interests. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997).

## A. A.Y.'s Deposition Testimony

[13] First, we observe that the method used to impeach a witness is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance. *See Kubsch v. State*, 934 N.E.2d 1138, 1151 (Ind. 2010); *see also Waldon v. State*, 684 N.E.2d 206, 208 (Ind. Ct. App. 1997) (stating that the nature and extent of cross-examining a witness is a matter of trial strategy that is left to trial counsel), *trans. denied*.

[14] Nunley's defense at trial was that A.Y. fabricated her claim that Nunley molested her. A.Y. was six years old when Nunley molested her in April 2008,

and she gave her deposition over a year later when she was seven. Nunley's trial counsel made strategic choices of how best to cast doubt on A.Y.'s trial testimony. Counsel had to tread carefully given A.Y.'s young age and her emotional state at trial. A.Y. cried during her direct examination and did not want to discuss the molestation because it was "too scary." Trial Tr. p. 438. A.Y. was similarly reluctant to answer questions about the molestation during her deposition and stated that she did not want to remember it. For all of these reasons, we conclude that Nunley's trial counsel was not ineffective for failing to use A.Y.'s deposition testimony to impeach her at trial.

## B. A.Y.'s Written Trial Testimony

[15] Nunley also argues that his trial counsel should have objected when the trial court allowed A.Y. to write down her trial testimony and when those documents were admitted into evidence and given to the jury. Nunley cites to *Shaffer v. State*, 674 N.E.2d 1 (Ind. Ct. App. 1996), *trans. denied*, in which our court stated that "Indiana law is distinctly biased against trial procedures which tend to emphasize the testimony of any single witness." *Id*. at 5 (citation and quotation omitted). But our court also observed that for a child, testifying in court can be a traumatic experience, and therefore "trial courts have permitted children to testify under special conditions despite the possibility that it would emphasize their testimony." *Id*. "As a result, the manner in which a party is entitled to question a witness of tender years, especially in embarrassing situations, is left largely to the discretion of the trial court." *Id*. (citing *Jackson v. State*, 535 N.E.2d 1173, 1174 (Ind. 1989)).

[16] At trial, A.Y. was distressed and cried when she was asked to testify about the molestation. She was afraid to answer the prosecutor's questions because of the number of people in the courtroom. Trial Tr. pp. 438–39. She asked if she could write down her answers to the State's questions, and the trial court allowed her to do so. In response to questions concerning where she and Nunley were when she saw his "weenie bob" and "what happened that night," A.Y. wrote on one piece of paper, "I was on the bed and Ed was to" and "He made me suck on his weeny bob."[2] Trial Tr. pp. 441–42; Trial Ex. Vol., Joint Ex. 1. On another piece of paper she wrote, "He made me suck on his weedy bob." Trial Ex. Vol., Joint Ex. 2. The trial court *sua sponte* admitted the two written statements into evidence to "identify it as the pieces of paper the witness . . . wrote on, which is in effect . . . part of her testimony." Trial Tr. p. 445. A.Y. later read her statement on Joint Exhibit 2 to the jury. Trial Tr. p. 450.

[17] Nunley's counsel was not ineffective for failing to object when the trial court allowed a distraught eight-year-old child to write her testimony down on a piece of paper. Moreover, Nunley has not established prejudice in the trial court's decision to admit the two written statements into evidence. A.Y.'s written statements were consistent with what she had reported to her parents and law enforcement officers, which evidence was also admitted at trial.

---

[2] A.Y. testified that she called male genitals "weenie-bobs." Trial Tr. p. 425.

## C. Admission of the DVD

[18] Nunley claims that his trial counsel was ineffective for failing to object to the admission of a DVD entitled "Sex Ed Tutor." Nunley claims that the DVD was not properly authenticated because A.Y. did not view the contents of the DVD at trial and could not identify the title of the DVD that Nunley showed to her. Further, Nunley argues that the DVD was the only "tangible evidence" to support his conviction on Count V, Class D felony dissemination of matter harmful to minors.

[19] Indiana Evidence Rule 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Authenticity may be established, among other methods, by "[t]estimony of a [w]itness with [k]nowledge. . . that an item is what it is claimed to be[.]" Ind. Evid. R. 901(b)(1).

[20] At trial, A.Y. testified that Nunley showed her a movie with naked boys and girls "doing bad stuff to each other." Trial Tr. p. 431. She identified State's Ex. 2 as the "DVD that has the bad stuff on it," *Id*. at 432, and that it was the DVD that Nunley had her watch in his bedroom. A.Y. testified that she saw the DVD before Nunley put it into the DVD player, and she identified it as the same DVD at trial. *Id*. at 469. Detective William Wibbels, who searched Nunley's home, testified that he found the DVD in Nunley's apartment. It was then admitted into evidence. *Id*. at 661–62. Because A.Y. testified that the DVD was the same one Nunley made her watch and she recognized it from seeing it in his

apartment before he put it in the DVD player, Nunley's trial counsel was not ineffective for failing to object to the admission of the DVD.

### D.   Separation of Witnesses

[21]   The purpose of a separation of witnesses order is to prevent the testimony of one witness from influencing that of another. *Smiley v. State*, 649 N.E.2d 697, 699 (Ind. Ct. App. 1995), *trans. denied*. Nunley claims the separation of witnesses order was violated because during trial and before A.Y. had finished testifying, the trial court allowed A.Y. to have lunch with her parents, who were also on the witness list. The trial court also ordered the prosecuting attorney to accompany them to lunch. Nunley argues that before lunch, A.Y. refused to answer several questions, but after lunch she was willing to answer those same questions. Nunley claims that A.Y. was "provided with appropriate answers during the recess." Appellant's Br. at 26.

[22]   Much of Nunley's argument amounts to pure speculation. And the trial court sent the deputy prosecutor to lunch with A.Y. and her parents to ensure that the separation of witnesses order was not violated. The trial court inquired of the prosecutor if anything needed to be addressed before trial resumed, and the prosecutor replied in the negative. Trial Tr. p. 447. Moreover, it was certainly not unreasonable for the trial court to allow A.Y. to have lunch with her parents. It is evident from the record before us that the trial was very stressful for the young child. For all of these reasons, Nunley's trial counsel was not ineffective for failing to object to the violation of the separation of witnesses order.

*E. Vouching Testimony*

Nunley asserts that his trial counsel was ineffective for failing to object to Detective Wibbels's testimony "vouching for the veracity and truthfulness of A.Y." Appellant's Br. at 28. Nunley failed to provide a record citation to the alleged vouching testimony. Therefore, Nunley waived this claim on appeal. *See e.g. Thomas v. State*, 965 N.E.2d 70, 77 n.2 (Ind. Ct. App. 2012), *trans. denied*; Ind. Appellate Rule 46(A)(8)(a).

*F. Cumulative Error*

Finally, Nunley claims that even if the alleged individual errors were not prejudicial, their cumulative effect was. However, Nunley does not cite to any authority or present any argument addressing how he was prejudiced by the cumulative impact. Therefore, he has waived this issue on appeal. Ind. Appellate Rule 46(A)(8)(a).

# Ineffective Assistance of Appellate Counsel

Nunley also claims that his appellate counsel was constitutionally ineffective for several reasons.[3] When we review claims of ineffective assistance of appellate counsel, we use the same standard applied to claims of ineffective assistance of trial counsel, i.e., Nunley must show that appellate counsel's performance fell

---

[3] Nunley claims that appellate counsel was ineffective for failing to raise the issues and arguments that he argues his trial counsel was ineffective for failing to raise. Because we conclude that Nunley's trial counsel was not ineffective, we similarly conclude that Nunley cannot establish that he was prejudiced by those alleged errors. Therefore, Nunley's appellate counsel was not ineffective for failing to raise those issues on appeal.

below an objective standard of reasonableness and that there is a reasonable probability that, but for the deficient performance of counsel, the result of the proceeding would have been different. *Manzano v. State*, 12 N.E.3d 321, 329 (Ind. Ct. App. 2014) (citing *Harris v. State*, 861 N.E.2d 1182, 1186 (Ind. 2007)), *trans. denied*. To show that counsel was ineffective for failing to raise an issue on appeal, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Id*. (citing *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006)).

[26] To evaluate the performance prong when counsel failed to raise issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record, and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Id*. If the analysis under this test demonstrates deficient performance, then we examine whether "the issues which . . . appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." *Id*. at 329–30.

[27] Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id*. at 330. Indeed, our supreme court has warned that we "should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy," and we "should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was

made." *Reed*, 856 N.E.2d at 1196 (quoting *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997)).

[28] Nunley claims that his appellate counsel was ineffective for (1) failing to argue that Nunley was denied the ability to present his defense because the trial court refused to admit evidence that A.Y. had made false accusations against another person, (2) failing to argue a double jeopardy violation, and (3) failing to argue that Nunley's sentence was inappropriate.

## A. Inability to Present his Defense

[29] Nunley argues his appellate counsel was ineffective for failing to argue that Nunley was denied the opportunity to present a complete defense because he was not able to present evidence that A.Y. had fabricated allegations of abuse against another person. First, we observe that Nunley does not cite to any portion of the record where he attempted to have this alleged evidence admitted at trial. Therefore, his claim is waived. *See* Ind. Appellate Rule 46(A)(8)(a).

[30] Moreover, his appellate counsel argued on appeal that the trial court erred when it excluded evidence that A.Y. "had made a false allegation to the police on another occasion." *Nunley*, 916 N.E.2d at 720. Our court held that the evidence was properly excluded pursuant to Evidence Rule 608(b), that the State did not open the door to admission of the evidence, and we rejected the argument that the rule "should yield to his right to present a defense." *Id*. (citing *Saunders v. State*, 848 N.E.2d 1117, 1122 (Ind. Ct. App. 2006), *trans. denied*).

Nunley's appellate counsel petitioned for transfer on the issue, which petition was ultimately denied. Nunley's claim that there was additional evidence that A.Y. fabricated a claim of prior abuse would not have prevailed under Evidence Rule 608(b) for the same reasons the similar claim was rejected in his direct appeal. We therefore conclude that Nunley's appellate counsel was not ineffective for failing to raise this argument on direct appeal.

### B. Double Jeopardy Claim

Nunley also argues that his appellate counsel was ineffective because he failed to argue that Nunley was convicted in violation of the Double Jeopardy Clause for the three acts charged in Counts I, II, and V. Specifically, Nunley claims that the three acts were "part and parcel of a single confrontation with a single victim." Appellant's Br. at 32.

But the authority that Nunley relies upon, *Bowling v. State*, 560 N.E.2d 658 (Ind. 1990), was impliedly overruled by our supreme court in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). *See Vermillion v. State*, 978 N.E.2d 459, 465 (Ind. Ct. App. 2012) (stating that "when *Richardson* was decided in 1999, it abrogated a number of cases that articulated the 'single incident' reasoning found in Bowling. However, *Richardson* made no mention of *Bowling*."). The *Vermillion* court held that "[a] trial court may impose consecutive sentences for separate and distinct crimes that arise out of a single confrontation involving the same victim–subject to *Richardson's* double-jeopardy protections, other sentencing mandates, and our abuse-of-discretion review." *Id*. at 466; *see also* Ind. Code § 35-50-1-2.

[34] For all of these reasons, Nunley's appellate counsel was not ineffective for failing to argue that his sentences for Counts I, II, and V violated double jeopardy principles.

## C.  Sentencing Errors

[35] Lastly, Nunley argues that his appellate counsel was ineffective when he failed to challenge the trial court's consideration of uncharged criminal conduct as an aggravating factor. And he claims his counsel was ineffective for failing to argue that Nunley's enhanced and consecutive sentences are inappropriate in light of the nature of the offense and the character of the offender.

[36] Nunley did not have a prior criminal history, but the trial court considered as aggravating that he had a history of criminal behavior because he was under investigation for molesting another child. The Court noted that it had "heard sworn testimony with respect to . . . the offenses that . . . the defendant allegedly committed." Trial Tr. p. 911. And "the defendant was present, the defendant's attorney was present, and the witness was subject to cross examination." *Id.* The court also considered that he was in a position of care and control of the victim when he molested her. Nunley was ordered to serve consecutive terms of thirty-five years for the Class A felony child molesting convictions and twenty-one months for the Class D felony dissemination of matter harmful to minors conviction.[4]  Nunley's sentences were less than the

---

[4] He was also ordered to serve a concurrent thirty-five-year term for Count III (Class A felony child molesting) and a consecutive four years and eight months for Count IV (Class C felony child molesting). Our

maximum fifty years allowed by law for a Class A Felony conviction and the maximum three years allowed for a Class D felony conviction on the date of Nunley's sentencing hearing. Ind. Code §§ 35-50-2-4, -7 (2005).

[37] Nunley's appellate counsel was not ineffective for failing to argue that the trial court improperly considered his uncharged criminal conduct as an aggravating circumstance. It is well-established that trial courts "may consider previous criminal activity, even though uncharged, in the determination of aggravating circumstances at sentencing." *Washington v. State*, 902 N.E.2d 280, 291 (Ind. Ct. App. 2009), *trans. denied. See also McElroy v. State*, 865 N.E.2d 584, 591 (Ind. 2007); *Harlan v. State*, 971 N.E.2d 163, 170 (Ind. Ct. App. 2012) (stating that "allegations of prior criminal activity need not be reduced to conviction before they may be properly considered as aggravating circumstances by a sentencing court"). The trial court considered sworn testimony that was subject to cross-examination in finding Nunley's abuse of another child as an aggravating circumstance.

[38] Nunley was also not prejudiced by his appellate counsel's decision to forego an inappropriate sentence claim. Our court will revise a sentence authorized by statute only "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The question is not

court reversed those two convictions on direct appeal, effectively reducing Nunley's sentence by four years and eight months.

whether another sentence is more appropriate, but whether Nunley's sentence is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The "nature of the offense" refers to a defendant's actions in comparison with the elements of the offense. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The "character of the offender" refers to "general sentencing considerations and the relevant aggravating and mitigating circumstances." *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007). Nunley bore the burden of proving that his less than maximum sentence was inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[39] Six-year-old A.Y. was left in Nunley's care. Nunley terrorized the young child by making her perform fellatio on him and forcing her to submit to him as he licked her vagina. Nunley told A.Y. that he would hurt her parents if she did not perform fellatio on him. He also forced her to watch a pornographic movie. The trauma A.Y. continued to suffer as a result of Nunley's actions was evident at trial. A.Y. was clearly distraught, often cried during her testimony, and took frequent breaks during her testimony.

[40] Although Nunley did not have any prior criminal convictions, there was evidence that he had abused at least one other child and that he was in a position of trust with that child. And the State presented evidence at sentencing that Nunley had engaged in misconduct at the jail while awaiting sentencing.

[41] Had appellate counsel raised the issue, our court would almost certainly have concluded that Nunley's sentence was not inappropriate in light of the nature of

the offense and the character of the offender. Therefore, Nunley cannot establish any prejudice, and we conclude that his appellate counsel was not ineffective when he failed to challenge Nunley's sentence.

## Conclusion

[42] For the reasons expressed in this decision, we conclude that Nunley has not established that his trial counsel or appellate counsel was ineffective. We therefore affirm the trial court's denial of his petition for post-conviction relief.

[43] Affirmed.

Najam, J., and Barnes, J., concur.